## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**BRIN C. GRIEGO (MARQUEZ)**
**on behalf of JOSEPH A. GRIEGO,**

   **Plaintiff,**

**vs.**             **No. CV 06-0336 LCS**

**JO ANNE B. BARNHART,**
**Commissioner of the Social Security,**

   **Defendant.**

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion to Reverse and  Remand Administrative Agency Decision, filed August 22, 2006.  (Doc. 12.)   On October 25, 2005, an Administrative Law Judge ("ALJ") issued an opinion denying Plaintiff's request for supplemental security income.  (R. at 12-22.)  On April 5, 2006, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner of Social Security.  (R. at 5-7.)  This matter comes before this Court pursuant to 28 U.S.C. § 636(c). The United States Magistrate Judge, having fully considered the motion, briefs, administrative record, and applicable law, finds that the motion should be **GRANTED in part** and **DENIED in part**.

### I.   STANDARD OF REVIEW

The  standard  of  review  in  a  Social  Security  appeal  is  whether  the  Commissioner's  final decision is supported by substantial evidence and whether he applied the correct legal standards. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). "Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

such relevant evidence as a reasonable mind might accept to support the conclusion." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988) (quotation marks and citations omitted).  The decision of an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record.  *Id.* at 805 (citation omitted).

The United States Code defines what constitutes a disability for a person under the age of 18 seeking social security disability benefits.  It provides that:

> (i) An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

> (ii) Notwithstanding clause (i), no individual under the age of 18 who engages in substantial gainful activity (determined in accordance with regulations prescribed pursuant to subparagraph (E)) may be considered to be disabled.

42 U.S.C. § 1382c(a)(3)(C)(i)-(ii).[1]  The Code of Federal Regulations defines the Social Security Administration's ("SSA") methodology for determination of children's disability benefits.  20 C.F.R. § 416.924.  The SSA considers "all relevant evidence in . . . [the child's] case record[,]" the combined effects on overall health and functioning of all alleged impairments to the extent the impairments are supported by evidence, and "any limitations in . . . [the child's] functioning that results from . . . [his] symptoms . . . ."  20 C.F.R. § 416.924.  Moreover, SSA considers "all of the relevant factors in §§ 416.924a and 416.924b whenever [they] . . . assess [the child's] . . . functioning at any step of [the] . . . process."  *Id.*

---

[1] The term "marked" as it is applied to functional limitations is defined in 20 C.F.R. § 416.926a(e)(2).  *See* discussion *infra* Part IV, 2.

SSA follows a set order to determine whether a child is disabled. *Id*. If the child is able to engage in substantial gainful activity, SSA will determine that he is not disabled and will not review his claim further. *Id*. If he is not doing substantial gainful activity, SSA will consider the child's impairments to see if he has an impairment or combination of impairments that is severe. *Id*. If the child's impairment is not severe, SSA will determine that he is not disabled and will not review his claim further. *Id*. If the impairment is severe, SSA will review the child's claim further to see if he has an impairment that meets, medically equals, or functionally equals the listings. *Id*. If the child has such an impairment, and it meets the duration requirement, SSA will find that the child is disabled. *Id*. If the child does not have such an impairment, or if it does not meet the duration requirement, SSA will find that the child is not disabled. *Id*.

## II.    PROCEDURAL HISTORY

Plaintiff Brin G. Marquez filed an application for disability insurance benefits on behalf of her eight-year-old son Joseph Griego on October 15, 2003. (R. at 53.) Plaintiff alleged that Joseph became disabled on July 8, 2002, with a severe speech impediment and extensive behavioral problems. (R. at 57.) On April 20, 2004, the Social Security Administration denied Plaintiff's benefits claim, stating that Joseph's conditions did not cause marked and severe functional limitations as required by the Social Security Act. (R. at 42-44.) SSA acknowledged Joseph's alleged conditions, but noted that Joseph was interacting well in school and showing improvement. (*Id*.) On July 21, 2004, Plaintiff requested reconsideration of SSA's decision, making allegations similar to those in her initial application for benefits. (R. at 39.) On September 13, 2004, SSA affirmed its decision denying benefits, again acknowledging Joseph's conditions but stating that they are not disabling under SSA guidelines. (R. at 36-38.)

On November 4, 2004, Plaintiff requested an ALJ hearing.  (R. at 35.)  On October 25, 2005, the ALJ issued an opinion denying Plaintiff's benefits claim.  (R. at 12-23.)  The ALJ conducted a step-by-step analysis to determine whether Joseph's conditions met the disability requirements under the SSA guidelines, and determined that they did not for reasons similar to those initially given by SSA.  (*Id*.)  On April 5, 2006, the Appeals Council affirmed the ALJ's decision.  (R. at 5-7.)  At the time of the administrative hearing, Joseph was in the second grade.  (R. at 201.)  His alleged speech and behavioral conditions, however, date back to when he was in kindergarten.  (R. at 165-72.)

## III.      RELEVANT  MEDICAL HISTORY

Numerous reports in the record submitted to the Court demonstrate Joseph's conditions and their effects on his functionality.  The first report comes from Plaintiff Brin Marquez.  The record contains a few different forms apparently completed by Ms. Marquez, the latest of which was completed on September 25, 2004.  (R. at 56-81, 83-91.)  The information Ms. Marquez conveyed in these forms appears consistent throughout.  She indicated Joseph had severe speech and behavioral problems.  (R. at 57.)  These problems resulted in Joseph having difficulty being understood, talking about his activities, delivering simple messages, asking certain questions, demonstrating knowledge of basic facts such as his birthday and the definitions of common words, reading capital letters, and understanding jokes.  (R. at 69-71.)  Joseph's difficulties, according to Ms. Marquez, also prevented him from enjoying being with other children the same age, showing affection towards other children the same age, sharing toys, and taking turns.  (R. at 72.)  According to Ms. Marquez, Joseph fought with his siblings, cried a lot, and was very disruptive in class.  (R. at 79, 83, 87.) Joseph was, however, able to see, hear, ask why, what, and where questions, use complete sentences of more than four words, take part in conversations with other children, ask for what he wants, tell about things

and activities that happened in the past, tell a short story, ask questions about a story that is read aloud, count three objects, recite numbers to ten, identify most colors, know his age, know his telephone number, conduct physical activities, show affection to his parents, play "pretend", hide-and-go-seek and board games, take care of himself, and pay attention and stick to a particular task. (R. at 68-73.)

The second report comes from the Albuquerque Public Schools and contains documents dating from March 21, 2002 to April 10, 2002. (R. at 93-102.) These documents indicate that Joseph suffered from poor speech capacity; specifically, 27% of Joseph's words were intelligible, and he displayed slight hoarseness in his vocal quality. (R. at 94, 100.) According to the documents, a Goldman-Fristoe Test of Articulation-2 was administered, and Joseph's score regarding his ability to produce speech sounds placed him at an age equivalency of less than two years.[2] (R. at 101.) The documents also demonstrate, though, that Joseph displayed normal fluency, vision, and hearing, and that he met normal developmental milestones. (R. at 94, 102.) Officials recommended that Joseph undergo speech therapy and that his language skills, vocal quality, and middle ear health be monitored. (R. at 94.) The documents show Joseph was assigned to one hour per week of speech and language therapy in special education, and one hour per year of audiology testing. (R. at 96, 98.)

The third report comes from the Presbyterian Medical Group. (R. at 103-09.) This report consists of several urgent care and ambulatory records dating from February 17, 2002 to September 14, 2003. (*Id.*) The records demonstrate instances of ailments such as fever, cough, and runny nose.

---

[2] The purpose of the Goldman-Fristoe Test of Articulation-2 is not described in any significant detail in the record. The Court notes that it is a "systematic measure of articulation of consonant sounds for children and young adults." http://ags.pearsonassessments.com (follow "Products A to Z" hyperlink; then follow "G" hyperlink; then follow "Goldman-Fristoe Test of Articulation 2" hyperlink).

5

(*Id.*)

The fourth report is another from Albuquerque Public Schools.  (R. at 112-23.)  This report contains special education evaluation documents from December 2003.   (*Id.*)  The documents show that in literacy and reading Joseph was strong in sound-symbol relationships, that he was proceeding at an expected rate for a kindergartener, and that he was very bright and a quick learner.  (R. at 114.) He was weak in retelling stories, sequencing events, and developing complexity in language.  (*Id.*) The documents show that Joseph was at grade level in math, social studies, writing, and concept development.  (R. at 114-15.)  Officials noted their concerns with regard to Joseph's speech capacity. (R. at 116.)  The documents demonstrate that Joseph had an articulation problem, and that officials recommended Joseph undergo one hour per week of special education speech therapy and one hour per year of audiology testing.  (R. at 119.)  Officials further recommended that Joseph be given extra time for oral responses in the general education environment, as well as flexibility in types of product outcomes and checks to make sure he understands instructions.  (R. at 120.)

The fifth report is from the University of New Mexico Children's Psychiatric Center.  (R. at 125-58.)  This report contains documents dating from August 13, 2003 to January 12, 2004.  (*Id.*) These documents demonstrate Joseph's likely exposure to illegal substances in utero and the instability of Joseph's family environment, including his mother's drug use and Joseph's moves between living with his grandmother and his mother.  The documents indicate that as of August 13, 2003, Joseph was diagnosed as having disruptive behavior and expressive speech disorders, and that he was in need of much help.  (R. at 145-58.)  A s of September 10, 2003, Joseph had problems with irritability and aggression towards teachers at school in the context of not being allowed to go with his brother to his brother's class.  (R. at 125.)  The documents also show, however, that as of January

12, 2004, Joseph showed marked improvement, was doing well with his peers and teacher at school, and showed no problems with mood, attention, or concentration.  (R. at 125-26.)

The sixth report comes from Charlotte Montoya, Joseph's kindergarten teacher, completed March 10, 2004.  (R. at 165-75.)  Ms. Montoya reported her evaluation of Joseph's status in six functional domains.  (*Id*.)  She stated that Joseph had very serious problems acquiring and using information and that he had slight problems with attending and completing tasks.[3]  (R. at 166-67.)  Ms. Montoya stated that Joseph had no problems with interacting and relating with others, moving about and manipulating objects, and caring for himself.  (R. at 168-71.)  She had no knowledge of any medications Joseph may or may not have been taking.  (R. at 172.)  In addition to assessing these functional domains, Ms. Montoya rated Joseph as demonstrating inadequate speech and communication performance in comparison to his peers.  (R. at 174-75.)  She stated that she believed Joseph's speech would be intelligible to a familiar listener 80% of the time and to an unfamiliar listener 70% of the time.  (R. at 174.)  She further stated that she believed a familiar listener would understand Joseph 95% of the time when the topic of conversation was known, and that after repetition a listener would understand Joseph 95% of the time.  (*Id*.)

On March 16, 2004, Dr. Cindy Cassatt of the Office of Disability, Office of Medical Evaluation, determined, with respect to Joseph's ability to interact and relate to others, that Joseph had severe speech and language impairments, but that these impairments resulted in a less-than-

---

[3] Specifically, regarding Joseph's very serious problems, Ms. Montoya asserted that Joseph had trouble comprehending oral instructions, understanding school and content vocabulary, reading and comprehending written material, comprehending and doing math problems, understanding and participating in class discussions, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions. (R. at 166.)

marked degree of interference with Joseph's ability to converse with others. (R. at 177.) With respect to Joseph's ability to acquire and use information, Dr. Cassatt noted Joseph's teacher's concerns regarding Joseph's academic difficulties, but said that the basis of these concerns was unclear. (*Id.*) Dr. Cassatt also noted that evidence regarding Joseph's conditions revealed conflicting information. The Albuquerque Public School reports demonstrated that Joseph was very bright and at grade level in most areas, but the teacher report evidenced that Joseph was having notable academic difficulties. (*Id.*) Dr. Cassatt recommended that Joseph undergo further mental evaluation to identify potential reasons for his ill-performance in school. (*Id.*)

## IV.    DISCUSSION

Plaintiff asserts in the Memorandum in Support of Plaintiff's Motion to Reverse or Remand, that: (1) Joseph's impairments meet the listings; or, in the alternative, (2) Joseph's impairments are functionally equivalent to the listings. (Doc. 13 at 4-17.) Plaintiff argues under both assertions that the ALJ's decision was not supported by substantial evidence. (*Id.*) I find that remand is necessary with respect to a portion of the ALJ's decision regarding whether Joseph's impairments meet the listings, although my decision in this regard does not reach whether the ALJ relied upon substantial evidence. As to the remaining issues, I find remand is not appropriate.

### (1)    Whether Joseph's Impairments Meet The Listings.

Plaintiff argues that the ALJ's decision finding that Joseph's impairments do not qualify him for benefits under (a) 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 111.09 (Communication) or (b) § 112.08 (Personality Disorder) was erroneous in that it was "unsupported by substantial evidence." (Doc. 13 at 4.) I find that the ALJ's decision regarding the "communication" listing is sound, but that her decision regarding the "personality disorder" requires more explanation such that this Court may

conduct a meaningful review.

(a)     **20 C.F.R. Pt. 404, Subpt. P, App. 1, § 111.09 (Communication)**

Plaintiff contends that Joseph's speech difficulties meet the "communication" listing under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 111.09, which provides in pertinent part that:

> Communication impairment, associated with documented neurological disorder.  And one of the following:
>
> A. Documented speech deficit which significantly affects the clarity and content of the speech . . . .

(Doc. 13 at 9-10.)  Defendant responds to Plaintiff's argument citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990), wherein the Supreme Court stated that: "[f]or a [plaintiff] to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." (*see also* Doc. 16 at 6-7.)  Defendant argues that Plaintiff has not demonstrated a documented neurological disorder, and thus Joseph's impairment does not match Listing 111.09.  (Doc. 16 at 7.)  Indeed, Plaintiff acknowledges that Joseph does not have a "clearly diagnosed neurological disorder," but argues that there is a neurological basis for Joseph's speech problems because Joseph's mother used cocaine, marijuana, and alcohol while pregnant with Joseph.  (Doc. 13 at 10.)  The ALJ did not explicitly address the documented neurological disorder criterion, but she did note that Joseph had no documented speech or comprehension deficits, and "no clear syndrome requiring treatment that could be identified."  (R. at 14, 16.)  I find that this issue, whether Joseph's impairment meets the "communication" listing, is resolvable based upon the documented neurological disorder criterion.

Plaintiff's argument, that Ms. Marquez's use of drugs and alcohol while pregnant with Joseph may constitute a neurological basis for Joseph's impairment, is unpersuasive.  Federal case law

demonstrates examples of what constitutes a "documented neurological disorder." *See Wier ex rel. Weir v. Heckler*, 734 F.2d 955, 962 (3d Cir. 1984) (noting that the Commissioner concedes minimal brain damage constitutes a documented neurological disorder); *see also Trostel ex rel. Murray v. Bowen*, 695 F.Supp. 1418, 1420 (E.D.N.Y. 1988) (holding that an ALJ's finding of attention deficit disorder with hyperactivity satisfied the documented neurological disorder criterion). To posit that Ms. Marquez's use of drugs and alcohol while pregnant with her child "could be a neurological basis for [Joseph's] speech impairment" (*see* Doc. 13 at 10) is a far cry from showing the *existence* of a particular neurological disorder such as attention deficit disorder or brain damage. The record contains no evidence of a documented neurological disorder, at least none to which Plaintiff directs the Court or which is otherwise apparent, and the Court will not speculate as to the existence of a neurological disorder based upon Ms. Marquez's drug and alcohol use. Having found no evidence of a documented neurological disorder, I find that remand is inappropriate as to whether Joseph's impairment meets the "communication" listing, and I decline to address whether the ALJ relied upon substantial evidence in finding that Joseph had no documented speech deficit that significantly affected the clarity and content of his speech. Plaintiff, in failing to show a documented neurological disorder, has failed to establish that Joseph's speech impairment matches the "communication" listing under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 111.09.

One might argue that because the ALJ did not explicitly decide that Joseph's impairment does not match the communication listing based upon the documented neurological disorder criterion, that the Court should remand if the ALJ's decision is not otherwise supported by substantial evidence under the Supreme Court's decision in *SEC v. Chenery Corp.*, 332 U.S. 194 (1947) (holding that the district court should affirm an agency decision only upon grounds set forth by the agency). I find that

this contention carries little weight in this case for two reasons. First, the ALJ does point out, as stated above, that Joseph had no documented speech or comprehension deficits, and that he had "no clear syndrome requiring treatment that could be identified." (R. at 14, 16.) The ALJ made these findings in the context of deciding whether Joseph's impairment matched the "communication" listing. I can reasonably discern from these findings that the ALJ decided Joseph had no documented neurological disorder. *See Davis v. Erdmann*, 607 F.2d 917, 919 n.1 (10th Cir. 1979) ("While we may not supply a reasoned basis for the agency's action that the agency itself has not given, . . . we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.") (citations omitted). Second, there is no disputed issue regarding whether Joseph had a documented neurological disorder. The "existence of primary authority or primary jurisdiction of an agency does not . . . require remand if the outcome is sufficiently clear." *Thompson v. Shalala*, 868 F.Supp. 621, 624 (S.D.N.Y. 1994) (citing *United States v. Chesapeake & Ohio Ry.*, 352 U.S. 77 (1956); *Skinner & Eddy Corp. v. United States*, 249 U.S. 557 (1919); *River Plate & Brazil Conferences v. Pressed Steel Car Co.*, 227 F.2d 60, 63 (2d Cir. 1955); *Int'l Travel Arrangers v. W. Airlines*, 623 F.2d 1255 (8th Cir. 1980)). Here, Plaintiff acknowledges that Joseph has no clearly established neurological disorder and points to no evidence showing a documented neurological disorder.

**(b)      20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.08 (Personality Disorder)**

Plaintiff contends that Joseph's behavioral problems meet the "personality disorder" listing under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.08, which provides in pertinent part that:

> Personality Disorders:   Manifested by pervasive, inflexible, and maladaptive personality traits, which are typical of the child's long-term functioning and not limited to discrete episodes of illness.
>
> The required level of severity for these disorders is met when the

11

requirements in both A and B are satisfied.

A. Deeply ingrained, maladaptive patterns of behavior, associated with one of the following:

. . .

3. Oddities of thought, perception, speech, and behavior;  or

. . .

5. Pathological dependence, passivity, or aggressiveness;  or

6. Intense and unstable interpersonal relationships and impulsive and exploitative behavior;

. . . .

(Doc. 13 at 10-14.)  Defendant contends that Plaintiff has failed to show Joseph matched any of these criteria.  (Doc. 16 at 7-14.)  The ALJ's determination reflects Defendant's contention.  (R. at 14-17.) I find, however, that the ALJ's decision contains inadequate reasoning to enable a meaningful review by this Court.  In reviewing a decision regarding Social Security benefits, the Court may neither re-weigh the evidence nor substitute its judgment for that of the agency.  *Hinton v. Massanari*, 13 Fed. Appx. 819, 820 (10th Cir. 2001) (citation omitted).  The ALJ, though, must "build an accurate and logical bridge from the evidence to [her] conclusion so that . . . [the reviewing court] may assess the validity of the agency's ultimate findings and afford a [plaintiff] meaningful judicial review." *Lane-Rauth v. Barnhart*, 437 F.Supp.2d 63, 67 (D.D.C. 2006)  (internal quotation marks and citations omitted); *see also Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).  In *Lane-Rauth*, the ALJ listed the relevant medical evidence and then stated his conclusion without linking the evidence to the conclusion.  *Id.* at 67.  The district court held that: "[b]ecause the ALJ simply listed all of the evidence without clearly explaining which particular pieces of evidence led him to his

12

conclusion, there is no logical bridge . . . and no thorough discussion and analysis . . . ." *Id.* at 67 (internal quotation marks and citations omitted).

Here, I am not satisfied that the ALJ provided a logical bridge between the medical evidence cited and her conclusion that Joseph's behavioral problems do not match the "personality disorder" listing, such that the Court can conduct a meaningful review. Regarding the evidence, the ALJ noted that Joseph was diagnosed with disruptive behavior disorder not otherwise specified, that he hit and bit a teacher, and that he was very aggressive at home with at least one sibling and with a Sunday school teacher. (R. at 15.) The ALJ also noted that as of November 2003, Joseph was showing improvement with his behavior and doing well. (*Id.*) Joseph threw a tantrum the first day of school, but subsequently behaved. (*Id.*) In December 2003, reports showed Joseph was exhibiting good behavior in school with no irritability or aggression, that Joseph was occasionally mean to his sister but responded well to redirection, that Joseph had no problems with hyperactivity or irritability, and that his behavior was not out of line with a normal five-year-old. (*Id.* at 16.) This evidence does not appear out of line with that contained in the record.[4] That said, the problem I do see is two-fold.

First, the evidence cuts both ways, and the ALJ provided no assessment of that evidence that

---

[4] Contents of the record are set forth above in the relevant medical history section. *See* discussion *supra* Part III. But the following is a brief synopsis of those facts that I find relevant here. Reports from Ms. Marquez show that Joseph did have behavior problems. He had difficulty showing affection towards other children the same age, sharing toys, and taking turns. (R. at 72.) Joseph fought with his siblings, cried a lot, and was disruptive in class. (R. at 79, 83, 87.) Joseph was, however, able to take part in conversations with other children and play various games, and he was able to show affection to his parents. (R. at 68-73.) APS documents show that as of December 2003, Joseph was proceeding at an expected rate for a kindergartner, and that he was very bright and a quick learner. (R. at 114.) The University of New Mexico Children's Psychiatric Center report demonstrates that Joseph had a disruptive disorder and had problems with irritability and aggression, but indicate that as of January 2004, Joseph showed marked improvement, was doing well with his peers and teacher at school, and showed no problems with mood, attention, or concentration. (R. at 125-26.)

allows me to discern her rationale.  The ALJ is not required to discuss every piece of evidence, but

she "must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly

probative evidence [she] rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (citations

omitted)[5]; *see also Lane-Rauth*, 437 F.Supp.2d at 67 ("While the ALJ need not articulate . . . [her]

reasons for rejecting every piece of evidence, . . . [she] must at least minimally discuss a [plaintiff's]

. . . evidence that contradicts the Commissioner's position.") (internal quotation marks and citations

omitted).  After reviewing the ALJ's decision, I am unable to understand, given the conflicting

---

[5] The Tenth Circuit stated in *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005), that:

> where an ALJ provides detailed findings, thoroughly reviewed and
> upheld by the district court, that confirm rejection of the listings in
> a manner readily reviewable, requiring reversal would extend
> *Clifton* beyond its own rationale.  Neither *Clifton*'s letter nor spirit
> require a remand for a more thorough discussion of the listings
> when confirmed or unchallenged findings made elsewhere in the
> ALJ's decision confirm the step three determination under review.

(footnote omitted).  One might read *Fischer-Ross* to mean that, in this case, my finding that the ALJ's decision with respect to whether Joseph's impairments are functionally equivalent to the listings (*see* discussion *infra* at Part IV, 2) is supported by substantial evidence precludes a "*Clifton*-based" remand.  I find that *Fischer-Ross* is distinguishable.  That case dealt with an adult disability determination.  *Id*.  The district court found remand necessary based upon *Clifton* because the ALJ's discussion concerning whether the plaintiff's impairments met or equaled the listings was conclusory.  *Id*. at 732.  The district court went on to find that the ALJ's decision as to whether the plaintiff was capable of past or other work was supported by substantial evidence.  *Id*. at 732-33.  The court of appeals reversed, holding that the ALJ's determinations with respect to whether plaintiff was able to perform past or other work supported the ALJ's finding regarding whether plaintiffs impairments met or equaled the listings.  *Id*. at 734-35.  Here, I am reviewing a child disability case where the briefing requires that I look no further than to whether the child's impairments meet or are functionally equivalent to the listings.  Nevertheless, assuming that *Fischer-Ross* is not distinguishable and would otherwise apply here, I find that the ALJ's discussion and the evidence presented with respect to functional equivalency do not confirm the ALJ's conclusion with respect to whether Joseph's impairments meet the "personality disorder" listing.

14

evidence, which evidence the ALJ credited and which she discounted, and the weight she assigned to the various pieces. *See Clifton*, 79 F.3d at 1009 ("In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion . . ., and whether he applied the correct legal standards to arrive at that conclusion."); *see also Lane-Rauth*, 437 F.Supp.2d at 68 ("where the ALJ's decision leaves the reviewing court with reservations as to whether an issue was fully addressed, the court should reverse.") (internal quotation marks and citations omitted).

The second problem I find with the ALJ's decision is that she does not discuss the "personality disorder" listing beyond merely citing in her conclusion that Joseph's impairment does not match the listing. The listing consists of numerous criteria, and the ALJ provides no discussion of these criteria, nor does she discuss how the evidence does or does not meet the various criteria. In *Scott v. Barnhart*, the court of appeals found it problematic that the ALJ did not discuss or reference the pertinent listing, and particularly that the ALJ did not present the pertinent listing in light of its analytical framework. 297 F.3d at 595. Here, the ALJ did reference the listing, but as in *Scott*, the ALJ did not provide any discussion of its framework. The court of appeals in *Scott* stated that such a failure left the court with "grave reservations as to whether . . . [the ALJ's] factual assessment addressed adequately the criteria of the listing." *Id.* at 595. I have similar reservations here. Thus, I find that remand is appropriate. The ALJ should provide a more reasoned discussion of the "personality disorder" listing, with an assessment of the evidence in light of the listing's criteria.

**(2)    Whether Joseph's Impairments Are Functionally Equivalent To The Listings.**

Plaintiff argues that the ALJ's decision that Joseph's impairments are not functionally equivalent to the listings was not supported by substantial evidence. Functional equivalence is

evaluated by considering six domains: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for self; and health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). An impairment is functionally equivalent to a listed impairment if the child has an extreme limitation in one domain, or marked limitations in two or more domains. 20 C.F.R. § 416.926a(d). A "marked" limitation interferes seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). Plaintiff contends, specifically, that Joseph's functioning shows marked limitation in the areas of (a) acquiring and using information and (b) interacting and relating with others. I find that Plaintiff's arguments are without merit, that the ALJ's decision was supported by substantial evidence, and that remand is unnecessary on this issue.[6]

### (a)    Acquiring and Using Information

Plaintiff asserts that Joseph cannot express himself or communicate complex ideas, that Joseph has trouble asking for information and comprehending instructions, and that he has trouble participating in class discussions, learning new material, and recalling previously learned material. (Doc. 13 at 15-16.) The ALJ specifically addressed this domain and found Joseph's limitations to be less than marked. (R. at 19.) The ALJ discussed evidence reflecting Plaintiff's present assertions, and she also discussed contradicting evidence. (*Id.*) Specifically, with respect to the contradicting evidence, the ALJ noted that school records indicated Joseph had good sound-symbol relationships, was proceeding at an expected rate for a kindergartner, and was a very bright a quick learner. (*Id.*)

_____

[6] The regulations describe what the agency will consider under these domains. *See* 20 C.F.R. § 416.926a(g), (i). The regulations provide for both general and age group specific considerations. I find it unnecessary to list these considerations here, as Plaintiff makes no argument that the ALJ failed take them into account. Rather, Plaintiff's argument goes to whether the ALJ relied upon substantial evidence.

Joseph's math, social science, and writing skills were progressing at grade level.  (*Id.*)  Joseph knew all colors, body parts, opposites, and position words.  (*Id.*)

I find the ALJ's presentation of the evidence consistent with the evidence in the record, and given the evidence presented, I cannot say that the ALJ relied on only a mere scintilla of evidence, or that the evidence she relied upon is overwhelmed by contradicting evidence.  Thus, I find that the ALJ's decision is supported by substantial evidence as to this domain.

### (b)      Interacting and Relating with Others

Plaintiff asserts with respect to this domain that Joseph has anger and aggression problems at school, fights with his siblings, and is generally disruptive.  (Doc. 13 at 16.)  Plaintiff further asserts that Joseph's speech problems cause him to have difficulty taking turns verbally, using greetings and social conventions, asking for help when he is confused, maintaining eye contact, and using social skills generally.  (*Id.* at 16-17.)  The ALJ's findings reflect Plaintiff's assertions, and also demonstrate contradicting evidence.  (R. at 20.)  With respect to the contradicting evidence, the ALJ noted that Joseph exhibited good classroom behavior and made a lot of friends, was a class leader and enjoyed helping others, and had no trouble interacting and relating with others.  (*Id.*)  The ALJ also noted a teacher's assessment that Joseph had no trouble interacting and relating with others.  (*Id.*)

As with the previous domain, I find the ALJ's  presentation of the evidence consistent with the evidence in the record, and given the evidence presented, I cannot say the ALJ relied on only a mere scintilla of evidence, or that the evidence she relied upon is overwhelmed by contradicting evidence.  Thus, I find that the ALJ's decision is supported by substantial evidence as to this domain.

One might infer from Plaintiff's argument that the ALJ did not specifically consider Joseph's

speech impairment as it may be relevant to this domain.  Even if this contention has merit, remand would be inappropriate.  Plaintiff does not argue Joseph has an extreme limitation in this domain, and Joseph's impairments cannot functionally equal the listings with a marked limitation in only one domain.  I have already found that the ALJ's decision with respect to the acquiring and using information domain was supported by substantial evidence, and Plaintiff does not contend Joseph suffers from a marked limitation in any other domain.  Thus, I will not remand based upon Plaintiff's argument that Joseph's impairments are functionally equivalent to the listings.

## V.      CONCLUSION

In accordance with the standard of limited review, this Court has determined that this case must be remanded to the Commissioner for further proceedings, in accordance with this Memorandum Opinion and Order.

**WHEREFORE, IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (Doc. 12) is **GRANTED in part** and **DENIED in part**, and this case is **REMANDED** to the Commissioner so that the ALJ can provide a more reasoned discussion of the "personality disorder" listing, with an assessment of the evidence in light of the listing's criteria, and a more thorough explanation as to why Joseph's impairments do or do not meet the listing.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**

19